1999 ND 214

**In the Interest of Z.R. and J.V., Children.**

**Constance L. Cleveland, Petitioner and Appellant,**

v.

**T.V. and B.V., Respondents and Appellees,**

**Director, Cass County Social Services, M.T., Z.R., J.V., and Joe Johnson, Guardian Ad Litem, Respondents.**

**Nos. 990218, 990219.**

Supreme Court of North Dakota.

Dec. 1, 1999.

Constance Louise Cleveland, Assistant State's Attorney, Fargo, N.D., for petitioner and appellant.

David A. Overboe, West Fargo, N.D., for respondents and appellees.

NEUMANN, Justice.

[¶ 1] The State appealed from a juvenile court order denying the State's petition to terminate the parental rights of T.V.(Tina) [1], B.V. (Brad), and M.T. (Marvin). We hold the State has failed to prove by clear and convincing evidence that the conditions and causes of the deprivation of Z.R. (Zeb) and J.V. (John) are likely to continue or will not be remedied. We affirm the denial of the petition and remand for entry of an order for temporary monitoring of these parents.

[¶ 2] Tina, age 26, is Zeb and John's mother. Marvin is Zeb's father, but he and Tina were never married and he has minimal or no contact with Zeb. Brad, age 28, is married to Tina and is John's father. Tina and Brad have a second child, Ann, born in January 1998, who is not involved in these proceedings. Tina also has two other children who are in the custody of their fathers and are not involved in these proceedings.

[¶ 3] Tina has a sporadic employment history working many jobs at which she has remained for very short periods of time. She testified she was presently working as a cashier at a service station. Brad has an engineering degree from North Dakota State University, and at the time of trial, held an engineering position, paying an annual salary of about $70,000.

[¶ 4] In December 1996 Brad and Tina took John, who was then two months old, to the MeritCare walk-in clinic in Fargo.

---

1. All names of the parties, other than the State, are pseudonyms.

John had incurred severe injuries, including fractures to his ribs, his wrists and ankles, and spiral fractures of his left humerus and right tibia and "epiphicial separations" of his femurs and tibias. The doctors determined these injuries occurred during multiple time frames and were the type of injuries caused by the "pulling, twisting, shaking or throwing" of the child with force suggesting they were caused by a person of adult or nearly adult size and strength. Child abuse by the parents was immediately suspected, and the children were taken from Brad and Tina's home and placed into foster care. Zeb was placed in the care of Tina's mother, V.S. (Valerie). John was placed in the care of Brad's parents, R.V. (Rex) and K.V. (Kathy). Subsequent to her birth in January 1998, Ann was also placed in Rex and Kathy's care.

[¶ 5] The State petitioned the juvenile court to determine if Zeb and John were deprived children and to make appropriate disposition of their custody and care. The court, the Honorable Frank L. Racek presiding, found the children were deprived and ordered they remain in the custody of the State's authority to make appropriate placements of the children and to provide visitation for Brad and Tina with the children. The court also ordered Brad and Tina to submit to psychological testing, after which the court would formulate an appropriate treatment plan. The parties were evaluated and a treatment plan was ordered by the court, which required Brad and Tina to receive individual therapy with a doctorate level psychologist or similar therapist and to attend parental training programs. Brad and Tina relocated to Johnson, Minnesota in July 1997, and the evaluations and treatment programs have been coordinated with appropriate authorities in this State and in Minnesota.

[¶ 6] In September 1998 the State filed a petition to terminate Brad and Tina's parental rights to John and to terminate Marvin and Tina's parental rights to Zeb. After a hearing, the juvenile court, the Honorable Norman J. Backes presiding, determined the children were deprived but the State had failed to prove by clear and convincing evidence the conditions and causes of the deprivation were likely to continue. The court denied the petition and ordered the children returned to Brad and Tina's custody. The State appealed.

[¶ 7] N.D.C.C. § 27–20–44 of the Uniform Juvenile Court Act authorizes the termination of parental rights in certain cases, and provides in relevant part:

1.  The court by order may terminate the parental rights of a parent with respect to the parent's child if:

    a.  The parent has abandoned the child;

    b.  The child is a deprived child and the court finds:

        (1) The conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm. . . .

Under subsection (b) the statute creates a three part test for determining whether the juvenile court may terminate parental rights: 1) is the child deprived; 2) are the conditions and causes of the deprivation likely to continue; and 3) is the child suffering, or will the child in the future, suffer serious physical, mental, moral, or emotional harm. *In Interest of A.S.*, 1998 ND 181, ¶ 15, 584 N.W.2d 853. The State must prove all three elements by clear and convincing evidence. *In Interest of L.F.*, 1998 ND 129, ¶ 10, 580 N.W.2d 573. On appeal, we review the juvenile court's decision regarding termination of parental rights and examine the evidence in a manner similar to a trial de novo. *In Interest of A.S.*, 1998 ND 181, ¶ 13, 584 N.W.2d 853. We review the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court. N.D.C.C. § 27–20–56(1).

[¶ 8] At the conclusion of the deprivation proceedings in June 1997, the juvenile court found Zeb and John were deprived children. A deprived child under our statutes includes a child who is "without proper parental care or control ... necessary for the child's physical, mental, or emotional health." N.D.C.C. § 27–20–02(5). The court specifically found only Tina and Brad had access to John "during each and every one of the time frames" in which John incurred multiple physical injuries. The court, thereby, implicitly found Brad and Tina had physically abused John, resulting in serious injury to him. Following the proceedings on the termination petition in June 1999, the juvenile court reconfirmed the prior finding that these children are deprived. Brad and Tina have not challenged the court's finding John and Zeb are deprived.

[¶ 9] As the second element for terminating parental rights, the State must prove by clear and convincing evidence the conditions and causes of the deprivation are likely to continue. Brad and Tina offered evidence at the termination proceedings to show they have complied with the court's treatment plan and have acquired the necessary counseling and education to provide a safe and nurturing environment for the children. The State offered counter evidence that Tina, in particular, has a personality disorder which precludes her from having empathy for other persons and from providing appropriate nurture and care for her children. The State asserts Tina's personality disorder is not amenable to treatment to enable her to provide a safe and caring home environment for the children. After hearing all of the testimony and viewing the demeanor of the witnesses, the trial court concluded the State had failed to prove by clear and convincing evidence the deprivation of the children by Brad and Tina was likely to continue, and the court ordered return of the children to them.

[¶ 10] Recognizing cases involving termination of parental rights are al-

ways difficult, we reviewed the principles guiding our determination in the recent case of *In Interest of L.F.*, at ¶ 9, 580 N.W.2d 573:

It is a well-established principle that parents have a fundamental, natural right to their children which is of constitutional dimension. This constitutional protection ensures parental rights may not be terminated "merely because a parent lacks the skill to optimize a normal child's potential." A parent's constitutional right, however, is not absolute, and a parent must at least provide care that satisfies the minimum community standards. "Any doubts should be resolved in favor of the natural parent[,] and parental rights should be terminated only when necessary for the child's welfare or in the interest of public safety."

(Citations omitted.) While we are not bound by them, we afford the juvenile court's findings appreciable weight, because the juvenile court has had an opportunity to observe the candor and demeanor of the witnesses. *In Interest of L.F.*, 1998 ND 129, ¶ 12, 580 N.W.2d 573.

[¶ 11] This is a particularly difficult case for two reasons. First, the severity of the injuries sustained by John places an onerous burden on the courts not to make a mistake returning the children to these parents, in whose care John suffered the injuries. Secondly, the juvenile court, which had the opportunity to observe the demeanor of all the witnesses, concluded the State had failed to prove by clear and convincing evidence the deprivation would likely continue if the children were returned to the parents. We give the trial court's findings deference and do not treat lightly its conclusions on this issue.

[¶ 12] Doctor Terry F. Nelson, a licensed psychologist with a doctorate degree in psychology, evaluated both Brad and Tina. Dr. Nelson concluded Tina has a histrionic personality disorder with attributes including intolerance of inactivity, resulting in impulsive and unreflective re-

sponses, avoidance of introspective thought, poor integration of experience, resulting in scattered learning and thoughtless judgment, and lack of empathy. Dr. Nelson determined Brad has obsessive personality features with symptoms of irritability and low mood reactions to stress in his life. It was Dr. Nelson's opinion nothing in Tina or Brad's life had substantially changed since the original court determination the children were deprived, and he concluded the return of the children to Brad and Tina's home would be contrary to their health and well-being.

[¶ 13] Dr. Katherine Slama has a doctorate degree in clinical psychology and practices at the Stevens Community Medical Center in Morris, Minnesota. She provided extended counseling therapy for Tina, involving 47 treatment sessions. Dr. Slama initially diagnosed Tina as suffering from post-traumatic stress and personality adjustment disorder. The stress was substantially caused by her relationship with her ex-husband between 1991 and 1995, who both physically and sexually abused her. According to the undisputed evidence, he beat her an average of twice a week during that period, causing Tina to sustain numerous injuries, including fractured ribs, a fractured tooth, and multiple sprains and bruises. Dr. Slama testified Tina has been successfully treated and can now deal with the stresses in her life. The sessions have concluded, but Tina has agreed to contact Dr. Slama for additional treatment if other stresses occur in the future for which she would require additional help. Dr. Slama disagreed with Dr. Nelson's conclusion that Tina suffers from a histrionic personality disorder or that she is unfit to care for her children. Dr. Slama testified Tina has learned to manage stress and Tina is not a threat to her children.

[¶ 14] In addition to the counseling therapy with Dr. Slama, Tina has attended several educational programs since the children were placed in foster care. Both Tina and Brad completed a 13–week course in child rearing at Alberta, Minnesota. Tina testified the program dealt with many family issues, including the proper parenting of children and disciplining techniques. She also attended two six-week courses in Moorhead, Minnesota, one on positive parenting and another on alternatives to discipline. Tina testified she learned in those courses techniques for dealing with stress and parenting. She also learned techniques of disciplining children and to avoid yelling or hitting the children as a means of disciplining them. In addition, Tina enrolled in and completed a college course in early childhood development. Both Tina and Brad also completed a "nurturing program" dealing with the various stages of development for children, which focused on family bonding and appropriate discipline. They both received certificates of completion for that course.

[¶ 15] Brad received individual anger management counseling from Dr. Raymond Quinones at the Stevens Community Medical Center in Morris, Minnesota. Brad also received anger management group counseling from Dr. Shawn O'Laughlin, a clinical psychologist practicing at St. Francis Medical Center in Breckenridge, Minnesota. Dr. O'Laughlin has a doctorate degree in clinical psychology. He testified Brad completed a 24–week anger management course with him and that Brad showed "good progress during the treatment group." Dr. O'Laughlin did not see any evidence in Brad of "explosive behavior or intimidation." He further testified that, in his opinion, Brad is a "low danger risk for assaultive behavior." Brad testified that after completing this program he now feels "a lot more in touch with what it is that makes me angry and what it takes to control that anger." Brad testified he believes, as a result of his therapy, his marriage has improved significantly and there is much less arguing. Brad attended and completed with Tina the parenting courses in Moorhead, Minnesota. He also completed and received a certificate for the 15–week family

nurturing program. All of these courses dealt with techniques for better parenting and bonding between parents and children.

[¶ 16] Tina and Brad have exercised their visitation privileges nearly to the maximum extent permitted by the juvenile court order. Tina's mother, Valerie, testified the visits Tina has had with Zeb at Valerie's home have gone very well. She testified "[h]e enjoys being with her. They do a lot of things together ... he wants to be with mom." Brad's father, Rex, testified the visits Tina and Brad have with John, and his younger sister, Ann, have gone very well. The children look forward to the visits, and both parents have a loving bond with the children.

[¶ 17] Brad's parents testified they do not believe the children would be safe in Tina and Brad's home. Tina countered with testimony these paternal grandparents have formed very close bonds with the children while providing foster care for them and, for that reason, do not want them to return to Tina and Brad's home.

[¶ 18] In determining whether the causes and conditions of deprivation will continue or will not be remedied, evidence of past deprivation alone is not enough, and there must be prognostic evidence that forms the basis for reasonable prediction of continued or future deprivation. *In Interest of A.S.*, 1998 ND 181, ¶ 19, 584 N.W.2d 853. A lack of parental cooperation is pertinent in determining whether deprivation will continue. *In Interest of L.F.*, 1998 ND 129, ¶ 17, 580 N.W.2d 573. There was some record evidence Brad and Tina failed to successfully arrange to be evaluated by an agency selected by the State and, instead, obtained psychological evaluations from an independent evaluator. There was also evidence Tina has failed to attend a type of behavioral therapy required in the court's treatment plan. However, the record indicates one of the proffered sources of that therapy was unable to offer an adequate program and another refused to admit Tina into the therapy because, in that

organization's view, Tina did not have a sufficient desire to change her behavior. For the most part, however, the record evidence shows substantial cooperation and affirmative action by Brad and Tina to obtain necessary counseling and education to be better parents. They have both had extensive counseling and therapy and they have both attended numerous parenting and family enhancement courses and programs. Their treating doctors have testified Tina and Brad have successfully completed therapy and do not currently present a substantial risk to the health and safety of the children.

[¶ 19] Although this is a close case, after reviewing all of the evidence we agree with the trial court the State has not proven by clear and convincing evidence that the causes and conditions of the original deprivation will continue if the children are returned to Brad and Tina. We do not make this decision lightly, but we do make it cognizant of the fact that doubts should be resolved in favor of the natural parents retaining their constitutional fundamental right to their children and that termination of those rights should only be allowed when the State has proven each statutory element by clear and convincing evidence. We hold, therefore, the State has failed to prove the elements necessary to terminate Brad and Tina's parental rights to their children.

[¶ 20] The juvenile court found John and Zeb are deprived children and that finding has not been challenged. Because this is such a close case and because the injuries to John were so serious, we conclude the denial of the termination petition should be accompanied by temporary monitoring of the parents' interaction with and parenting of the children upon their return. The termination statute provides under N.D.C.C. § 27–20–44(2):

> If the court does not make an order of termination of parental rights, it may grant an order under section 27–20–30 if the court finds from clear and convinc-

ing evidence that the child is a deprived child.

Under N.D.C.C. § 27–20–30(1)(a), if a child is found to be deprived the court can retain the children in the parents' custody "subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child." Upon remand, we direct the juvenile court to order Cass County Social Services to monitor Brad and Tina's parenting of their children for a period of two years after their return. If Brad and Tina fail to provide proper parental care or control necessary for their childrens' physical, mental, or emotional health the court may entertain another petition to terminate parental rights or for other appropriate remedy under the Uniform Juvenile Court Act.

[¶ 21] The State's petition to terminate Marvin's parental rights to Zeb was based on abandonment grounds. *See* N.D.C.C. 27–20–44(1)(a); *Matter of Adoption of J.W.M.,* 532 N.W.2d 372, 379 (N.D.1995). The juvenile court found that although Marvin has had little or no contact with Zeb since 1996 he has continued to pay child support. There is also evidence Zeb has maintained a relationship with Marvin's father. The juvenile court concluded, therefore, it would not be in Zeb's best interest to terminate Marvin's parental rights to him. At appellate argument, the State conceded Marvin's parental rights should not be terminated if this court upheld the denial of the termination of Tina's parental rights to Zeb. We deem the issue of Marvin's parental termination vacated by the State.

[¶ 22] Affirmed and remanded for order establishing temporary monitoring of these parents.

[¶ 23] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, DALE V. SANDSTROM, JJ., concur.